FILED

2020 Oct-13  PM 04:41
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## JASPER DIVISION

| | | |
|---|---|---|
| **ANGELA M. REED,** | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| **v.** | } | **Case No.:  6:19-CV-01762-RDP** |
| | } | |
| **ANDREW SAUL,** | } | |
| **Commissioner of Social Security,** | } | |
| | } | |
| **Defendant.** | } | |

## MEMORANDUM OF DECISION

Angela Reed ("Plaintiff") brings this action pursuant to §§ 205(g) and 1631(c)(3) of the Social Security Act (the "Act"), seeking review of the decision by the Commissioner of Social Security ("Commissioner") denying claims for a period of disability, disability insurance benefits ("DIB"), and Supplemental Security Income ("SSI"). 42 U.S.C. §§ 405(g), 1383(c). Based on the court's review of the record and the briefs submitted by the parties, the court finds that the decision of the Commissioner is due to be affirmed.

## I.    PROCEEDINGS BELOW

On July 25, 2016, Plaintiff filed applications for DIB, disability, and SSI, alleging a period of disability beginning on June 1, 2016.[1]  (R. 87-88, 162, 194).  Plaintiff's applications were initially denied by the Social Security Administration on December 6, 2016.  (R. 87-88).  Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"), which was granted.  (R.

---

[1] An individual cannot receive SSI for any period prior to the month in which she filed her application.  *See* 20 C.F.R. §§ 416.330, 416.335.  Thus, the relevant period for deciding Plaintiff's case is the month in which she filed her SSI application (here, July 2016) through the date of the ALJ's decision, and not from her alleged onset date to the date of the ALJ's decision.  *Id.*

119-47).   On September 6, 2018, ALJ Steven M. Rachal, presided over the video hearing from Birmingham, Alabama, along with vocational expert ("VE"), Robert D. Mosely, and also with Plaintiff and her counsel appearing from Jasper, Alabama.  (R. 39, 64).  On November 21, 2018, the ALJ entered his decision denying Plaintiff's applications for disability and SSI benefits.  (R. 7-27).  The ALJ determined that Plaintiff had not been disabled within the meaning of §§ 216(i), 223(d), and 1614(a)(3)(A) of the Act from June 1, 2016, through the date of the decision.  (R. 23). The Appeals Counsel denied Plaintiff's request for review of the ALJ's decision (R. 1-6), making the ALJ's decision the final decision of the Commissioner and ripe for judicial review under 42 U.S.C. §§ 405(g) and 1383(c).

## II.    FACTS

At the time of the hearing, Plaintiff was 51 years old, had acquired a high school diploma, and completed one year of vocational training in cosmetology.  (R. 45, 162).  In her hearing testimony, Plaintiff testified that she has previous work experience as a cashier, home attendant, florist supplies salesperson, salesclerk, and receptionist.  (R. 45-51, 62).  Plaintiff also testified that she lives alone and that on a typical day she is able to watch television, prepare simple meals, care for her emotional support dogs, and drive herself to the store to shop.  (R. 53-61).  In her written report, dated August 27, 2016, Plaintiff asserts that she is not only capable of completing the aforementioned activities but can also manage her personal care, manage her finances, attend church, do laundry, maintain concentration for a few minutes, and follow written and spoken instructions.  (R. 219-226).

Plaintiff claims that she has been disabled since June 1, 2016. (R. 162).  According to Plaintiff, she suffers from physical and mental impairments that affect her ability to work.  (R. 51-52, 199).  Plaintiff alleges that scoliosis, which was the result of an automobile accident she had

in her twenties, is a physical ailment that prevents her from working.  (R. 52-53).  Since her automobile accident, Plaintiff alleges that she experiences pain after standing or sitting for long periods of time; however, Plaintiff has not received medication, treatment, or surgical intervention for her scoliosis.  (*Id.*).  Additionally, Plaintiff alleges she suffers from the following severe mental impairments: bipolar, anxiety, depression, and panic attacks.  (R. 51-52, 162, 199).  Plaintiff has also identified social anxiety and panic attacks as the primary problems that adversely affect her ability to work.  (R. 52-53).

Prior to the alleged onset date, Plaintiff was admitted to Walker Baptist Medical Center on April 25, 2015, after a visit to the emergency department where she complained of worsening anxiety and panic attacks.  (R. 279).  During that visit, examination findings indicated that Plaintiff was in a depressed and anxious mood, had scratches along her left forearm, and had suicidal ideations; however, the findings also noted that Plaintiff exercised normal behavior and judgment. (R. 279-81).  Plaintiff was discharged one week later on May 1, 2015, with symptoms congruent of a mood disorder.  (R. 289-90).  Plaintiff's mental treatment regimen began with Prozac and Ativan but after she expressed concerns, Plaintiff was taken off Prozac and started on Remeron and Lithium.  (R. 290).  Plaintiff was subsequently referred to Northwest Alabama Mental Health Center for continuation of care.  (*Id.*).

On June 3, 2015, Plaintiff presented at Northwest Alabama Mental Health Center reporting feelings of guilt, sleep disturbance, decreased energy levels, decreased interest in activities, anxiety, and panic attacks.  (R. 293).  Mental examination findings during her visit showed that she was in a depressed and anxious mood, she was easily distractible, and displayed obsessions and compulsions; however, Plaintiff's affect was appropriate, her appearance was appropriate, she had normal orientation, adequate insight, logical thoughts, undisturbed psychomotor activity and

memory, and expressed no hallucinations or suicidal thoughts. (R. 296). Plaintiff was diagnosed with bipolar, affective disorder and panic disorder, attention deficit disorder, and was assigned a Global Assessment of Function ("GAF") score of 45. (R. 297). Plaintiff's medication levels were adjusted accordingly, and she was referred to the facility for further treatment. (*Id.*). In the following months, progress notes from Northwest Alabama Mental Health Center indicate that Plaintiff's mental state improved, and that she reported that her "mood was pretty good." (R. 301, 303).

On November 23, 2016, Dr. Joseph W. Dixon, a treating physician, conducted a psychological evaluation of Plaintiff, noting that "based upon records reviewed, results of the clinic interview, reported history, and observations", Plaintiff's symptoms are indicative of a "Generalized Anxiety Disorder." (R. 306, 309). Dr. Dixon noted that "[Plaintiff's] mental status was clear . . . . [and] there were no signs or symptoms of serious thought disorder, behavioral disorder, or mood disorder" despite Plaintiff appearing "somewhat anxious and fidgety." (R. 309). Dr. Dixon further noted that "there is no other mental impairment present other than the anxiety disorder" and that "[Plaintiff] presented [ ] nicely dressed and groomed, she demonstrated a normal range of interests, and she exhibited good conversational and social skills." (*Id.*). Finally, Dr. Dixon concluded his psychological evaluation stating that "[Plaintiff] was very polite and friendly" and that "[s]he has the ability to function independently." (*Id.*).

From February 2016 through October 2017, Plaintiff presented at Northwest Alabama Mental Health Center seeking treatment for her mental conditions. (R. 310-69). Throughout these visits, Plaintiff was reported to be appropriately groomed, exhibited average demeanor, exhibited average and appropriate eye contact, normal orientation, undisturbed memory, average intelligence, cooperative behavior and rapport, and had logical thoughts despite a distractible

4

attention span, expressed a depressed and anxious mood and affect, and there was concern for her poor insights and judgment. (R. 319, 334, 337, 341, 347, 350, 352). Further, the progress notes indicated that Plaintiff was able to retain a capacity to perform activities of daily life (R. 319, 323-24, 326, 329, 337, 340-41, 347, 350, 352), and reflect an updated diagnosis of additional mental disorders such as: major depressive disorder, recurrent episodes of depression, as well as severe and generalized anxiety disorder (R. 318, 332, 345). In March 2016, Plaintiff reported that she no longer took her prescribed medications, with the exception of Risperdal, because the medications made her feel as if she had no energy, no emotions, and no desire to get out of bed. (R. 332). Plaintiff's progress notes through the remainder of 2017 report that Plaintiff had an improvement in sleep and that she did not experience a panic attack; however, the progress notes also state that Plaintiff expressed concern regarding her financial situation. (R. 351).

From September 2017 through August 2018, primary care provider records from Magic Wellness Center show routine visits by Plaintiff for anxiety and minor illnesses. (R. 371-444, 451-463). Plaintiff's prescription history related to these visits indicate that several prescriptions were filled for her throughout this time period, including Paxil, Ativan, Valium, and Wellburtin. (R. 371-77, 383-85, 387, 453, 455, 456, 461). These progress records also note that Plaintiff exhibited a worsening of symptoms of depression and anxiety after her father's passing; however, by August 2018, Plaintiff reported an improvement with her anxiety with agoraphobia symptoms as she had been getting out of the house. (R. 461, 463).

## III.    ALJ DECISION

Disability under the Act is determined under a five-step test. 20 C.F.R. § 404.1520. First, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b). "Substantial work activity" is work activity that involves significant

physical or mental activities. 20 C.F.R. § 404.1572(a). If the ALJ finds that the claimant is engaged in substantial gainful activity, the claimant cannot claim disability. 20 C.F.R. § 404.1520(b). Second, the ALJ must determine whether the claimant has a medically determinable impairment or a combination of impairments that significantly limits the claimant's ability to perform basic work activities. 20 C.F.R. § 404.1520(c). Absent such impairment, the claimant may not claim disability. *Id.* Third, the ALJ must determine whether the claimant meets or medically equals the criteria of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526. If such criteria are met, then the claimant is declared disabled. 20 C.F.R. § 404.1520(d).

Even if the claimant cannot be declared disabled under the third step, the ALJ may still find disability under the next two steps of the analysis. The ALJ must determine the claimant's residual functional capacity ("RFC"), which refers to the claimant's ability to work despite her impairments. 20 C.F.R. § 404.1520(e). In the fourth step, the ALJ must determine whether the claimant has the RFC to perform past relevant work. 20 C.F.R. § 404.1520(f). If it is determined that the claimant is capable of performing past relevant work, then the claimant is not disabled. 20 C.F.R. § 404.1560(b)(3). If the ALJ finds that the claimant is unable to perform past relevant work, then the analysis proceeds to the fifth and final step. 20 C.F.R. § 404.1520(g)(1). In this final analytical step, the ALJ must decide whether the claimant is able to perform any other relevant work corresponding with her RFC, age, education, and work experience. 20 C.F.R. § 404.1560(c). Here, the burden of proof shifts from the claimant to the ALJ in proving the existence of a significant number of jobs in the national economy that the claimant can perform given her RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 404.1560(c).

In this case, the ALJ found that (1) Plaintiff has not engaged in substantial gainful activity since her alleged onset date of disability, June 1, 2016, and (2) she suffers from the following severe impairments that significantly limit her ability to perform basic work activities: panic disorder with agoraphobia, generalized anxiety disorder, and depression.  (R. 12).  However, the ALJ concluded that Plaintiff's severe impairments did not meet or medically equal one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1.  (R. 13).  After consideration of the entire record, the ALJ determined that Plaintiff retains the RFC to perform a full range of work at all exertional levels, within the context of 20 C.F.R. §§ 404.1527, 404.1529, 416.927, 416.929, and SSR 16-3p, based on her ability: to understand, remember, carry out simple instructions and tasks within two hour increments; engage in occasional work-required interaction with co-workers, supervisors, and the public; and also tolerate workplace changes that are infrequent and gradually introduced.  (R. 15-16).  Following the testimony of the VE, the ALJ determined that Plaintiff was precluded from performing her past relevant work as a cashier, home attendant, salesperson, salesclerk, or receptionist.  (R. 21).  However, the ALJ determined she could perform other jobs existing in significant numbers in the national economy, including positions such as marker, router, and cleaner/housekeeper.  (R. 21-22).  The ALJ further concluded that Plaintiff was not disabled as defined by the Act. (R. 23). Finally, the ALJ concluded that Plaintiff had not been under a disability at any time between June 1, 2016, through the date of the ALJ's decision, November 21, 2018.  (*Id.*).

## IV.   PLAINTIFF'S ARGUMENT FOR REMAND OR REVERSAL

Plaintiff advances two arguments in favor of reversing the ALJ's decision.  First, she claims that the ALJ improperly applied the Eleventh Circuit's pain standard by relying exclusively on objective evidence contained in the record.  In particular, Plaintiff's primary contention is that the

ALJ failed to consider Plaintiff's subjective testimony regarding the severity of her ailments. Second, Plaintiff contends that the ALJ's decision to deny a period of disability, DIB, and SSI was not based on substantial evidence because that determination was based on a misapplication of evidence that could not constitute substantial evidence.

## V.    STANDARD OF REVIEW

Judicial review of disability claims under the Act is limited to whether the Commissioner's decision is supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005).   "The Commissioner's factual findings are conclusive" when "supported by substantial evidence." *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001).   "Substantial evidence" is more than a mere scintilla and is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) (quoting *Lewis v. Callahan*, 125 F.3d 1346, 1349 (11th Cir. 1997)).   Even if the Commissioner's decision is not supported by a preponderance of the evidence, the findings must be affirmed if they are supported by substantial evidence.  *Id.* at 1158-59; *see also Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990).   However, the Commissioner's conclusions of law are not entitled to the same deference as findings of fact and are reviewed *de novo*.  *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1260 (11th Cir. 2007).

## VI.    DISCUSSION

### a.    The ALJ Properly Applied the Eleventh Circuit Standard for Evaluating Disability Due to Pain

Plaintiff first contends that the ALJ's step four RFC determination is not supported by substantial evidence because the ALJ used the wrong standard for evaluating her mental illness. Specifically, Plaintiff asserts that the ALJ selectively chose notations in the record that support the

decision to deny benefits as and failed to account for Plaintiff's subjective evidence regarding the severity of her ailments. However, this argument fails because the record makes clear that the ALJ determined that Plaintiff's testimony regarding the intensity, persistence, and limiting effects of her symptoms was not consistent with the evidence contained in the record as a whole. (R. 16).

A claimant's subjective complaints alone are insufficient to establish disability under the Act. *See* 20 C.F.R. §§ 404.1529(a), 416.929(a); *Edwards v. Sullivan*, 937 F.2d 580, 584 (11th Cir. 1991). In *Holt v. Sullivan*, the Eleventh Circuit has articulated the "pain standard" that applies when a claimant seeks to establish disability through her own testimony about pain or other subjective symptoms. 921 F.2d 1221, 1223 (11th Cir. 1991). Under the standard, a claimant must show:

> (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

921 F.2d at 1223 (internal citation omitted). The relevant pain standard applies during the fourth step of the ALJ's determination of Plaintiff's RFC. 20 C.F.R. 20 C.F.R. §§ 404.1529(c), 416.929(c)-(d). If a claimant successfully establishes the existence of an underlying medical condition that could reasonably be expected to produce the alleged symptoms, as Plaintiff did here, the ALJ may discredit a claimant's testimony regarding symptoms so long as he "clearly articulate[s] explicit and adequate reasons" for doing so. *Dyer v. Barnhart*, 395 F.3d at 1210 (quoting *Foote v. Chater*, 67 F.3d 1553, 1561-62 (11th Cir. 1995)). Any failure to adequately express the reasons for discrediting a claimant's subjective symptomology requires the testimony to be accepted as true as a matter of law. *Holt v. Sullivan*, 921 F.2d at 1223. Here, the ALJ concluded that "[Plaintiff's] medically determinable impairments could reasonably be expected to cause some of alleged symptoms; however, [Plaintiff's] statements concerning the intensity,

persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in [the] decision." (R. 16). The ALJ discredited Plaintiff's pain testimony. (*Id.*) The court's task now is to evaluate whether the ALJ's stated reasons for doing so are supported by substantial evidence in the record. *Dyer*, 395 F.3d at 1210. They are.

The ALJ opined that "[Plaintiff's] allegations are not supported by the objective medical evidence" and are inconsistent with the level of symptomology of which Plaintiff claims. (R. 16). Plaintiff alleges that she experiences constant panic attacks with palpitations when she interacts with others; however, Plaintiff's mental examination records report that she is cooperative and friendly despite reporting feelings of anxiety and depression. (R. 17, 307-09). Also, Plaintiff's testimony at the ALJ hearing—which initially indicated that she was able to manage her own personal care—directly contrasts with her own statements at the end of the hearing in which she reported that she could not remember the last time she showered. (R. 54-57, 61). This claim is also inconsistent with the evidence of record which continuously indicates that Plaintiff was appropriate, clean, and neatly groomed in appearance. (R. 307, 309, 319, 332, 334, 337, 341, 347, 350, 352). Plaintiff's statement that she does not take medication is also inconsistent with evidence in the record that show Plaintiff's continuous refills of psychotropic medications. (R. 387, 392, 405, 409, 417, 452). The medical prescription records not only show that the refills were continuous but also indicate that the prescriptions were effective in alleviating Plaintiff's symptoms due to a reported improvement in mood by Plaintiff since she had begun the medications. (R. 408, 417, 461). Furthermore, Plaintiff's statement that she is willing to attend therapy but is unable to afford therapy is directly contradicted by Northwest Alabama Mental Health Center records indicating that she is able to afford therapy but stopped attending counseling

10

in October 2016.  (R. 18, 332, 340).  Finally, Plaintiff's assertions also clash with her daily activities, including watching television, preparing simple meals, caring for her dogs, driving alone, leaving home, shopping in stores, attending church, doing laundry, ability to follow written and spoken instructions, and paying attention for minutes at a time.  (R. 19, 319, 334, 337, 341, 347, 350, 352).

In summary, the ALJ considered Plaintiff's activities of daily living, the frequency, intensity, and inhibiting effects of her symptoms, the types and dosages of her medications, and concluded that Plaintiff's subjective complaints were inconsistent with her testimony and the medical records.  Thus, the ALJ adequately explained his reasons for discrediting Plaintiff's subjective testimony.  The court concludes that the ALJ followed the correct legal standards and that his decision to discredit Plaintiff's subjective evidence regarding the severity of her pain is supported by substantial evidence in the record.

**b.      Substantial Evidence in the Record Supports the ALJ Decision**

Second, Plaintiff contends that the ALJ's decision is not based on substantial evidence because the ALJ fails to properly apply the Eleventh Circuit pain standard.  After review of the entire record and for the reasons set forth above, the court concludes that the ALJ's decision to deny benefits to Plaintiff is supported by substantial evidence in the record.

The function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied.  42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).  The court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence."  *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).  It is "more than a scintilla, but less than a preponderance."  *Id.*

Here, the ALJ fully and fairly developed the record in deciding to deny benefits.  The ALJ is obligated to explore all relevant facts pertaining to a case for the sake of developing a full and fair record.  *Welch v. Bowen*, 854 F.2d 436, 440 (11th Cir. 1988) (quoting *Cowart v. Schwiker*, 662 F.2d 731, 735 (11th Cir. 1981)).  The ALJ's decision to deny benefits in this matter was reached after a comprehensive examination of the entire record based on the considerations given the evidence at the hearing level, medical opinions given by Plaintiff's treating physicians, and the medical record evidence submitted.  The ALJ's discussion of Plaintiff's subjective pain testimony, in the context of the entire record, indicates that the ALJ conducted an analysis of the entire medical record to develop a full and fair record.  (R. 40-48).  Despite Plaintiff's allegations to the contrary, the ALJ did not selectively or arbitrarily choose notations in the record that support the decision to deny benefits but rather the ALJ was performing his obligation to explore all relevant facts and evidence for the sake of developing a full and fair record.

It is emphatically Plaintiff's burden to prove disability.  In this case, the Plaintiff failed to do so.  The ALJ's decision to discredit portions of Plaintiff's subjective testimony based on inconsistencies in the record is supported by substantial evidence.

## VI.    CONCLUSION

Upon review of the administrative record, and considering all of Plaintiff's arguments, the court finds the Commissioner's decision is supported by substantial evidence and in accord with the applicable law.  A separate order that is consistent with this opinion will be entered.

**DONE** and **ORDERED** this October 13, 2020.

R. DAVID PROCTOR
UNITED STATES DISTRICT JUDGE